Elise R. Sanguinetti (SBN 191389)
Jamie G. Goldstein (SBN 302479)
**ARIAS, SANGUINETTI, WANG & TORRIJOS, LLP**
2200 Powell Street, Suite 740
Emeryville, California 94608
Telephone:    (510) 629-4877
Facsimile:     (510) 291-9742
elise@aswtlawyers.com
jamie@aswtlawyers.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA REGALADO PATINO, individually and as Successor in Interest of the Estate of Carlos Patino Regalado, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | 1.  Failure to Provide Medical Care in Violation of Fourteenth Amendment; |
| COUNTY OF MONTEREY; SHERIFF STEVEN BERNAL; JAMES BASS; JOHN THORNBURG; RAY TONGOL; DEPUTY AARON GAVINA; DEPUTY DURRER; DEPUTY LEMON; WELLPATH, LLC; KIP HALLMAN; JORGE DOMINICIS; THOMAS PANGBURN, M.D.; PAUL FRANCISCO, M.D.; JENNIFER LEWIS; HUGO OCTAVIO ESQUIVEL AMESQUITA and DOES 1-20, | 2.  Failure to Protect from Harm in Violation of Fourteenth Amendment; |
| | 3.  Deprivation of Substantive Due Process in Violation of First and Fourteenth Amendments; |
| | 4.  Medical Malpractice; |
| | 5.  Failure to Furnish Medical Care; |
| Defendants. | 6.  Negligent Supervision, Training, Hiring, and Retention; |
| | 7.  Wrongful Death; |
| | 8.  Negligence. |
| | **[JURY TRIAL DEMANDED]** |

**COMPLAINT FOR DAMAGES**

**INTRODUCTION**

1.      This matter arises from the suicide by hanging of Carlos Patino Regalado that occurred on March 13, 2021, which resulted in his death on March 19, 2021. Mr. Regalado was arrested on February 16, 2021, related to various charges. Mr. Regalado was brought to the Monterey County Jail, where medical staff and jail staff were aware that Mr. Regalado suffered from serious psychological ailments. Mr. Regalado was taken on and off suicide watch on multiple occasions leading up to his death. On the day of his death, having just returned from the hospital for a psychiatric emergency, Mr. Regalado was initially placed on suicide watch, however, the suicide watch was discontinued, and he was moved to an isolation cell on March 13, 2021. Despite Mr. Regalado's history of severe psychiatric issues and recent known suicide attempts and expressions of suicidal ideation, and other known psychological ailments, Mr. Regalado remained in the isolation cell that contained hanging points. Not only should he never have been taken off of suicide watch and placed in an isolation cell, especially with hanging point, but he also was not provided proper medical and mental health attention or adequate monitoring until his final suicide attempt on March 13, 2021, which resulted in his death on March 19, 2021.

2.      Mr. Regalado's mother, ANA REGALADO PATINO, individually and as Successor in Interest of the Estate of Carlos Patino Regalado, brings this action for damages against Defendants for civil rights violations, deliberate indifference, medical malpractice, wrongful death, survival claims and negligence arising out of Defendants' deliberate indifference and negligence that caused the needless suffering and death of Carlos Patino Regalado and the losses to Mr. Regalado's mother.

**JURISDICTION AND VENUE**

3.      This Complaint seeks damages for violations of the civil rights, privileges, and immunities guaranteed by the First and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983 and 1988, and for violations of California state law.

4.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343.

COMPLAINT FOR DAMAGES

5.     This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367 because the claims form part of the same case or controversy arising under the United States Constitution and federal law.

6.     Plaintiff's claims arose in the County of Monterey, State of California. Venue therefore lies in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2).

7.     Rule 3 of the Federal Rules of Civil Procedure and Local Rule 3-2(e) authorizes assignment to this division because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred Monterey County, which is served by this division.

## PARTIES

8.     Plaintiff ANA REGALADO PATINO is, and at all times mentioned herein, was the mother of Carlos Patino Regalado, and resided in Monterey County, State of California.

9.     At the time of death, Carlos Patino Regalado was a citizen of the United States of America and a resident of Monterey County, State of California.

10.    Plaintiff ANA REGALADO PATINO brings this action individually and as Successor in Interest of the Estate of Carlos Patino Regalado pursuant to California Code of Civil Procedure §§ 377.10, *et. seq*.

11.    Plaintiff ANA REGALADO PATINO, as mother of Carlos Patino Regalado, brings these claims individually for violations of civil rights under the First and Fourteenth Amendments and California State law.

12.    Defendant HUGO OCTAVIO ESQUIVEL AMESQUITA (hereinafter "ESQUIVEL AMESQUITA"), upon information and belief is the biological father of Carlos Patino Regalado and his last known residence is believed to be Irapuato Guanajuato, Mexico. Mr. ESQUIVEL AMESQUITA has had no contact with Mr. Regalado since the age of two. Defendant ESQUIVEL AMESQUITA is named as a nominal defendant in this matter as a known potential heir.

13.    At the time of his death, Mr. Regalado was unmarried and had no children, therefore there are no other heirs to Mr. Regalado's estate.

**COMPLAINT FOR DAMAGES**

14.     Defendant COUNTY OF MONTEREY (hereinafter "COUNTY") is a public entity, duly organized and existing under the laws of the State of California. Under its authority, Defendant County of Monterey operates and manages the Monterey County Jail (hereinafter "Jail") and is and was at all relevant times mentioned herein responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the Monterey County Sheriff's Department and Monterey County Jail, and each entity's respective employees and/or agents. Monterey County Sheriff's Department operates the Monterey County Jail and is and was responsible for ensuring the provision of emergency, mental health and medical services to all Monterey County Jail inmates. The County is responsible for ensuring that the basic human needs of individuals in its custody are met, and for ensuring that individuals are not at risk of serious harm and to ensure they receive adequate mental health and medical care. The County is also responsible for ensuring that jail policies and practices do not violate prisoners' constitutional rights. The County by law possesses ultimate authority over and responsibility for the mental health care, medical care, treatment, and safekeeping of inmates including decedent, Carlos Patino Regalado.

15.     Defendant SHERIFF STEVEN BERNAL (hereinafter "Bernal") is and was at all times mentioned herein the Sherrif of the County of Monterey, the highest position in the Monterey County Sheriff's Department. As Sheriff, Defendant Bernal is and was responsible for hiring, screening, training, retention, supervision, discipline counseling, and control of all Monterey Sheriff's Department custodial employees and/or agents. Defendant Bernal is and was charged by law with the administration of the Monterey County Jail, with the assistance of a small group of executive officers. Defendant BERNAL also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the Monterey County Sheriff's Department alleged herein were committed. Defendant Bernal is being sued in his individual and official capacities.

16.     Defendant JAMES BASS (hereinafter "BASS") is Chief Deputy of the MCSO Corrections Bureau. Previously, he was a Captain and Commander in the MCSO Corrections Bureau, which are also high-level supervisory positions. At all times relevant herein, Bass's responsibilities included assisting the Sheriff-Coroner with oversight and administration of the

**COMPLAINT FOR DAMAGES**

Jail, and overseeing Jail operations, including ensuring the safety of the inmates housed therein. Bass has been specifically responsible for working on issues related to provision of health care to people incarcerated at the Jail, including but not limited to issues related to the *Hernandez* class action lawsuit. Bass was and is responsible for supervision of MCSO employees and/or agents at the Jail, and for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts and omissions alleged herein were committed. Defendant Bass is sued in his individual and official capacities.

17.     Defendant JOHN THORNBURG (hereinafter "THORNBURG") is Chief Deputy of the MCSO Enforcement Bureau, and at all times relevant herein was either a captain or chief deputy, which are also high-level supervisory positions in MCSO with responsibilities that include oversight and enforcement of MCSO policies and procedures at the Jail and review and/or allowance of the practices/customs pursuant to which the actions and omissions alleged herein were committed. Defendant Thornburg is sued in his individual and official capacities.

18.     Defendant RAY TONGOL (hereinafter "TONGOL") is a high-level supervisor in MCSO who was Jail Operations Commander or other high-level supervisor at the Jail during all times relevant herein. His responsibilities included assisting the Sheriff-Coroner with oversight and administration of the Jail, including supervision of MCSO employees and/or agents at the Jail, promulgation of policies and procedures for Jail operations, and review and/or allowance of the practices/customs pursuant to which the actions and omissions alleged herein were committed. TONGOL is sued in his individual and official capacities.

19.     Defendant DEPUTY AARON GAVINA (hereinafter "GAVINA") is and was at all times mentioned herein a deputy of the jail and employee of Defendant COUNTY OF MONTEREY and in doing the acts hereinafter described, acted within the scope and course of his employment. As a deputy at the Jail, this Defendant was responsible for carrying out Monterey County Jail policies and procedures and for ensuring the safety of people incarcerated at the Jail.

20.     Defendant DEPUTY DURRER (first name currently unknown to Plaintiff), (hereinafter "DURRER") is and was at all times mentioned herein a deputy of the jail and employee of Defendant COUNTY OF MONTEREY and in doing the acts hereinafter described, acted within

**COMPLAINT FOR DAMAGES**

1    the scope and course of his/her/their employment. As a deputy at the Jail, this Defendant was

2    responsible for carrying out Monterey County Jail policies and procedures and for ensuring the

3    safety of people incarcerated at the Jail.

4    21.    Defendant DEPUTY LEMON (first name currently unknown to Plaintiff), (hereinafter

5    "LEMON") is and was at all times mentioned herein a deputy of the jail and employee of

6    Defendant COUNTY OF MONTEREY and in doing the acts hereinafter described, acted within

7    the scope and course of his/her/their employment. As a deputy at the Jail, this Defendant was

8    responsible for carrying out Monterey County Jail policies and procedures and for ensuring the

9    safety of people incarcerated at the Jail.

10   22.    Defendants GAVINA, DURRER and LEMON are hereinafter collectively referred to as

11   "MONTEREY OFFICERS".

12   23.    Defendant WELLPATH, LLC ("WELLPATH") is a corporation headquartered in

13   Nashville, Tennessee. WELLPATH is one of the nation's largest for-profit correctional health

14   care providers, currently servicing approximately 394 county jails and community facilities and

15   more than 140 state and federal prisons in approximately 36 states. The COUNTY OF

16   MONTEREY contracts with WELLPATH to provide medical, mental health, and dental

17   services for the Jail. Prior to 2018, Monterey County contracted with California Forensic

18   Medical Group ("CFMG"), which was owned by the private equity firm HIG Capital as part

19   of their portfolio of Correctional Medical Group Companies ("CMGC"). In 2018, facilitated

20   by $610 million in Wall Street loans, HIG Capital merged CMGC with another correctional

21   healthcare acquisition, Correct Care Solutions, and rebranded as WELLPATH. The

22   COUNTY has contracted with WELLPATH and its precursor, CFMG, to provide health care

23   at its Jail for approximately 37 years, since 1984. *Hernandez*, 110 F.Supp.3d at 936.

24   WELLPATH was responsible for the provision of health services in the Jail at all times

25   relevant herein.

26   24.    Defendant KIP HALLMAN is, and was at all relevant times herein, President of

27   WELLPATH. His responsibilities included the promulgation of the policies and procedures

28   and allowance of the practices/customs pursuant to which the acts and omissions alleged

**COMPLAINT FOR DAMAGES**

herein were committed. Hallman had knowledge of deficiencies in policies, procedures, and practices regarding provision of health care at Monterey County Jail and failed to take reasonable and adequate measures to correct these failures prior to Mr. Regalado's death.

25.     Defendant JORGE DOMINICIS is, and was at all relevant times herein, Chief Executive Officer of WELLPATH. His responsibilities include managing overall operations and resources, making major corporate decisions, and driving corporate strategy. Dominicis had knowledge of deficiencies in policies, procedures, and practices regarding provision of health care at Monterey County Jail and failed to take reasonable and adequate measures to correct these failures prior to Mr. Regalado's death.

26.     Defendant THOMAS PANGBURN, M.D. is the Chief Clinical Officer for Wellpath and has been in this position since at least fall of 2019. His responsibilities include communicating between medical staff and administration and ensuring appropriate care to all patients. Pangburn had knowledge of deficiencies in policies, procedures, and practices regarding provision of health care at Monterey County Jail and had failed to take reasonable and adequate measures to correct these failures prior to Mr. Regalado's death.

27.     Defendant PAUL FRANCISCO, M.D ("FRANCISCO") was at all relevant times mentioned herein, a psychiatrist responsible for providing treatment to persons incarcerated at Monterey County Jail, including Mr. Regalado. Francisco failed to provide adequate treatment to Mr. Regalado, including but not limited to failing to adequately assess and provide adequate treatment related to Mr. Regalado's mental health on and before March 13, 2021, or take other action to ensure that Mr. Regalado's mental health was appropriately assessed and treated. FRANCISCO was well aware of Mr. Regalado's mental health history, including past suicide attempts, however, he failed to take adequate steps to address Mr. Regalado's health and safety on and before March 13, 2021. FRANCISCO was deliberately indifferent to Mr. Regalado's mental health needs on and before March 13, 2021, and never provided any

28.     Defendant JENNIFER LEWIS, ("LEWIS") upon information and belief is a licensed clinical social worker and/or a marriage and family therapist. LEWIS is and was at all times

**COMPLAINT FOR DAMAGES**

1    mentioned herein an employee and/or agent of WELLPATH and an employee and/or agent of
2    County of Monterey and in doing the acts hereinafter described, acted within the course and
3    scope of her employment and/or agency. Defendant LEWIS was responsible for providing
4    medical and mental health treatment to Mr. Regalado, including evaluating his overall mental
5    health and recognizing signs of suicidal ideation.

6    29.    Defendants FRANCISCO and LEWIS are hereinafter collectively referred to as
7    "WELLPATH PROVIDERS".

8    30.    The true names and identities of Defendants Does 1 through 10 are presently unknown to
9    Plaintiff. Plaintiff alleges that each of Defendants Does 1 through 10 were employed by or agents
10   of the COUNTY OF MONTEREY including the Monterey County Jail, at the time of the conduct
11   alleged herein. Plaintiff alleges that each of Defendants Does 1 through 10 were deliberately
12   indifferent to Carlos Regalado Patino's medical needs and safety, failed to provide necessary
13   medical or psychiatric care to him or take other measures to prevent him from attempting suicide,
14   violated his civil rights, wrongfully caused his death, and/or encouraged, directed, enabled and/or
15   ordered other defendants to engage in such conduct. Plaintiff further allege that Defendants Does
16   1 through 10 violated Plaintiff's First and Fourteenth Amendment rights and rights under
17   California state law. Plaintiff further alleges that each of Defendants Does 1 through 10 was
18   responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and
19   control of medical, mental health, and jail custody employees and/or agents involved in the
20   conduct alleges herein.

21   31.    The true names and identities of Defendants Does 11 through 20 are presently unknown to
22   Plaintiff. Plaintiff alleges that each of Defendants Does 11 through 20 were employed by or
23   agents of WELLPATH at the time of the conduct alleged herein. Plaintiff alleges that each of
24   Defendants Does 11 through 20 were deliberately indifferent to Carlos Patino Regalado's medical
25   needs and safety, failed to provide necessary medical or psychiatric care to him or take other
26   measures to prevent him from attempting suicide, violated his civil rights, wrongfully caused his
27   death, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such
28   conduct. Plaintiff further alleges that Defendants Does 11 through 20 violated Plaintiff's First and

COMPLAINT FOR DAMAGES

1   Fourteenth Amendment rights, and rights under California state law. Plaintiff further alleges that

2   each of Defendants Does 11 through 20 was responsible for the hiring, screening, training,

3   retention, supervision, discipline, counseling, and control of medical, mental health, and jail

4   custody employees and/or agents involved in the conduct alleged herein.

5   32.     Plaintiff will seek to amend this Complaint as soon as the true names and identities of

6   Defendants Does 1 through 20 have been ascertained.

7   33.     The COUNTY OF MONTEREY defendants, the COUNTY OF MONTEREY employees,

8   and Does 1 through 10 engaged in the acts or omissions alleged herein under color of state law.

9   34.     Plaintiff is informed and believes and thereon alleges that at all times mentioned in this

10  Complaint, Defendants were the agents, employees, servants, joint venturers, partners and/or co-

11  conspirators of the other Defendants named in this Complaint and that at all times, each of the

12  Defendants was acting within the course and scope of said relationship with Defendants.

13  **EXHAUSTION OF PRE-SUIT PROCEDURES**

14  **FOR STATE LAW CLAIMS**

15  35.     Plaintiff ANA PATINO REGALADO filed a governmental tort claim with the County

16  of Monterey on September 7, 2021. The County of Monterey has not responded to Plaintiff's

17  claim as of the date of filing the present Complaint.

18  36.     By correspondence dated February 2, 2022, Plaintiff notified Defendants

19  WELLPATH and WELLPATH PROVIDERS of their intention to file suit against them

20  based on their negligence in providing professional health care services, as required by

21  Section 364 of the California Code of Civil Procedure.

22  **FACTUAL ALLEGATIONS**

23  I.      **Defendants' Longstanding Failure to Provide Adequate Health Care at**

24          **Monterey County Jail**

25  37.     Defendants COUNTY OF MONTEREY and WELLPATH have a longstanding

26  history and practice of failing to provide adequate medical care, including mental health care

27  to persons in their custody at Monterey County Jail. Their ongoing refusal to provide

28

**COMPLAINT FOR DAMAGES**

minimally adequate treatment constitutes deliberate indifference and resulted in Mr. Regalado's untimely death.

38.     Defendant COUNTY OF MONTEREY has a longstanding history and practice of failing to ensure that safety, health, and welfare checks are adequately and correctly performed by officers at the Jail in order to effect their intended purpose of protecting people incarcerated at the Jail from harm.

39.     Defendants have been on notice that their provision of medical care to inmates is inadequate and results in substantial risk of serious harm since at least 2007, when the County hired an outside consulting firm to perform a needs assessment for the Jail. This assessment, as well as a second needs assessment completed in 2011, found that medical and mental health treatment at the Jail were inadequate.

40.     From 2014-2017, the Monterey County Civil Grand Jury investigated the condition and management of the Monterey County Jail and found consistent problems that resulted in risk of serious harm to people in the Jail. The failures documented by the Grand Jury included "frequently missed or skipped" safety checks of inmates and "mental health issues [ ] still not being addressed."

41.     In April 2015, the District Court presiding over *Hernandez v. County of Monterey*, et al, a class action lawsuit against Monterey County and CFMG for, *inter alia*, failing to provide minimally adequate medical and mental health care at the Jail—found substantial evidence that the Jail's system of medical and mental health care was Constitutionally deficient, and subjected people with existing medical and mental health conditions in its custody at risk of serious harm, including self-harm. These hazardous policies and practices included, inter alia, cells with hanging points, incomplete intake health screenings, inadequate care scheduling, insufficient interpretation services, and lack in continuity of prescription medications. The Court stated that the Jail's systemic failures in providing psychiatric medication caused inmates with mental illness to decompensate, leading to additional harm and suffering. The *Hernandez* Court issued a preliminary injunction ordering the County and CFMG (now Wellpath) to file a plan to remedy these violations.

**COMPLAINT FOR DAMAGES**

42.     On May 11, 2015, the parties in *Hernandez* filed a settlement agreement that required the County and CFMG to create Implementation Plans for improvements to the Jail's intake screening process, removal of hanging points in cells, system for medication continuity, custody and clinical staffing, and medical and mental health care.

43.     In April 2016, the County and CFMG submitted Implementation Plans to the District Court that included revisions to their procedures for, *inter alia*, intake screenings, medication continuity and administration, interpretation services, access to health care and mental health services, psychiatric monitoring, suicide prevention, recordkeeping, and staffing.

44.     Pursuant to the Implementation Plans Defendants filed with the Court, the Jail's new policies would specifically include the following elements, among others:

*Interpretation.* Interpretation is to be used whenever necessary.

*Mental Health Screening During Intake.*

- All new inmates are to be observed and queried for signs and history of mental illness, including suicidal behavior/ideations and use of psychiatric medication.

- Inmates must also be queried about drug/alcohol use and their emotional response to incarceration.

- Staff must request treatment records indicating current and recent medications, hospitalizations, emergency room visits, and outpatient services.

- Presence or history of mental illness requires further evaluation by mental health services staff.

*Continuation of Medications Begun Prior to Incarceration.*

- Information about medications that the inmate was taking prior to incarceration shall be obtained from their physician.

- Prior treatment records shall inform current medication plan.

*Monitoring*.

COMPLAINT FOR DAMAGES

- Patients with chronic health conditions shall be seen by the psychiatrist at least every ninety days if condition is stable or more frequently if condition is unstable while in custody.

- At minimum, the psychiatric provider will assess the patient's diagnosis, degree of control, and history, including compliance with therapeutic regimen.

45. In addition to the findings of the Jail needs assessments, the Grand Jury, and the *Hernandez* Court, Defendants have been on notice of their Constitutionally deficient provision of health care and safety checks at the Jail as a result of the disproportionately high death rate at the Jail compared to other Jails in California, and nationally.

46. Despite Defendants' extensive knowledge of the inadequate health care at the Jail, the deficiencies in safety, health, and welfare checks conducted by officers at the Jail, and the attendant risks of serious harm to people housed there, as of 2019, Defendants continued to refuse to fully remediate these deficiencies.

47. Despite Defendants' extensive knowledge of the risk of hanging points in jail cells which provided inmates with psychiatric ailments an outlet by which to implement their suicidal plans, cells at the jail were not modified to remove hanging points.

**II.    Improper use of Isolation**

48. COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and FRANCISCO are deliberately indifferent to the substantial and obvious risk of harm caused by County's policies and practices of locking prisoners in isolation, including prisoners with psychiatric disabilities. Over the last several decades, mental health and correctional experts have documented the harmful effects of prolonged isolation. Common side effects of prolonged isolation include anxiety, panic, withdrawal, hallucinations, self-mutilation, and suicidal thoughts and behaviors. Due to these side effects, prolonged isolation is known to worsen existing psychiatric disabilities and can cause prisoners without pre-existing psychiatric disabilities to develop them.

49.     Placement in isolation imposes an atypical and significant hardship on the prisoner in relation to the ordinary incidents of incarcerated life, so as to create a liberty interest protected by due process. COUNTY, BERNAL, BASS, THORNBURG and TONGOL, fail to provide an adequate process to protect that liberty interest. Despite the harmful and punitive conditions in these units, COUNTY, BERNAL, BASS, THORNBURG and TONGOL lack an effective, accurate classification system to determine who gets placed in isolation. Prisoners are placed in isolation indefinitely, with some individuals held in isolation for years while they resolve pending criminal cases. COUNTY, BERNAL, BASS, THORNBURG and TONGOL offer prisoners no meaningful way to challenge their placement in isolation, despite purporting to conduct regular review of these placements.

50.     COUNTY, BERNAL, BASS, THORNBURG and TONGOL disciplinary process fails to take into account behavior which results from psychiatric disabilities and the lack of adequate mental health care at the Jail. As a result, COUNTY, BERNAL, BASS, THORNBURG and TONGOL lock people with psychiatric disabilities in isolation, including in safety cells, for nonconforming and erratic behaviors related to their psychiatric disabilities without exploring whether less restrictive options or alternatives could resolve the behaviors. This policy and practice deprives inmates with psychiatric disabilities of access to the programs, services, and activities available in the less restrictive units. The restrictive conditions and lack of programming options in the isolation units serve only to worsen these disability-related behaviors. Instead of providing treatment, however, COUNTY, BERNAL, BASS, THORNBURG and TONGOL respond by locking prisoners in isolation for even longer periods of time.

51.     COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and FRANCISCO also fail to monitor prisoners with and without psychiatric disabilities or provide sufficient mental health services to prisoners locked in isolation. This is despite the well-known medical and mental health dangers of locking people in their cells for prolonged periods of time.

**COMPLAINT FOR DAMAGES**

52.     The conditions in isolation significantly increase the risk that prisoners with psychiatric disabilities will have their condition decompensate when placed in isolation. A significantly disproportionate percentage of suicides occur in isolation units. Because of the risks posed by isolation to prisoners with psychiatric disabilities, a consensus has been reached in mental health correctional communities that prisoners with psychiatric disabilities should only be placed in isolation if absolutely necessary. In addition, if prisoners with mental illness are placed in isolation, there must be limits on the amount of time they remain in such units, they must be monitored closely, and they must be provided with significant structured and unstructured out-of-cell time.

53.     COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and FRANCISCO lack policies and practices to revaluate whether prisoners with mental illness placed in isolation should remain in isolation.

54.     COUNTY, BERNAL, BASS, THORNBURG and TONGOL's policy for conducting safety checks is inadequate to ensure the safety of prisoners with serious mental illness. COUNTY, BERNAL, BASS, THORNBURG and TONGOL have a policy requiring safety checks but fail to follow this policy and frequently fail to conduct appropriate checks at intermittent and unpredictable times. COUNTY, BERNAL, BASS, THORNBURG, TONGOL, GAVINA, DURRER and LEMON performance of safety checks is perfunctory and does not include direct visual observation that is sufficient to assess the prisoner's well-being and behavior. COUNTY, BERNAL, BASS, THORNBURG, TONGOL, GAVINA, DURRER and LEMON fail to utilize verbal interaction as a part of their safety checks even when visual observation of the subject prisoner is obscured or circumstances otherwise demonstrate reason for concern about the prisoner's well-being and behavior. As a result, prisoners in isolation are placed at an increased risk of harm.

55.     COUNTY, BERNAL, BASS, THORNBURG and TONGOL's inadequate policies and procedures for monitoring prisoners in isolation units, including prisoners with psychiatric disabilities placed Mr. Regalado at risk prior to his suicide and contributed to his suicide

**COMPLAINT FOR DAMAGES**

because COUNTY, BERNAL, BASS, THORNBURG, TONGOL, GAVINA, DURRER and LEMON failed to conduct meaningful safety checks.

56.     The cumulative effect of prolonged isolation, along with the denial of opportunities for vocational, recreational, educational, and religious programming, being housed in a small cramped and filthy cell have caused prisoners at the Jail, including prisoners with psychiatric disabilities, serious physical and psychological harm and puts them at substantial risk of significant harm.

**III.     Failure to Provide Minimally Adequate Mental Health Care**

57.     COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, FRANCISCO, WELLPATH and LEWIS failed to meet their constitutional obligation to provide adequate mental health care to prisoners in the Jail. COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, FRANCISCO, WELLPATH and LEWIS are deliberately indifferent to the fact that their failure to provide adequate mental health care subjects prisoners to a substantial risk of deteriorating psychiatric conditions, extreme and unnecessary anguish, suffering and death. COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, FRANCISCO, WELLPATH and LEWIS exacerbate the psychological trauma experienced by prisoners with serious mental health conditions who are housed in isolation, including in safety cells, by failing to provide them with necessary mental health care. As a result, their disabilities worsen and their disability-related behaviors escalate, causing them to be kept in isolation longer.

58.     Mental health care in the Jail is provided by or through COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, FRANCISCO, WELLPATH and LEWIS.

59.     COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS, PANGBURN, FRANCISCO and LEWIS control prisoners' access to mental health care professionals and medications, inside or outside of the Jail. Accordingly, prisoners cannot receive any mental health care services, including psychotropic medication,

1    group and individual therapy, and suicide intervention, unless COUNTY, BERNAL, BASS,

2    THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, FRANCISCO,

3    WELLPATH and LEWIS provide them.

4    60.    COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS,

5    PANGBURN, WELLPATH and FRANCISCO failed to adequately train custody, mental

6    health and medical care staff on how to provide appropriate and timely mental health care.

7    The lack of training is evident from the numerous incidents in which prisoners' health and

8    lives have been, and continue to be, placed at risk as a result of the deficient mental health

9    care provided in the Jail. As a result of a lack of adequate training, custody and health care

10   staff including GAVINA, DURRER, LEMON, FRANCISCO and LEWIS failed to: (a)

11   provide timely and appropriate mental health screening; (b) track and monitor prisoners with

12   psychiatric disabilities; (c) properly administer and monitor psychotropic medications; (d)

13   recognize and properly refer prisoners exhibiting signs and symptoms of psychiatric

14   disabilities to mental health staff; (e) respond adequately to prisoners who are suicidal; (f)

15   appropriately house prisoners with serious mental illness in the least restrictive setting

16   appropriate to their needs; (g) properly respond to prisoners' requests for mental health care

17   or provide appropriate follow-up care; (h) provide confidential spaces for mental health

18   treatment; (i) maintain accurate and complete mental health records; and fail to (j) provide

19   appropriate re-entry services for prisoners with psychiatric disabilities to allow them to

20   properly continue their mental health care.

21   61.    COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS,

22   PANGBURN, WELLPATH and FRANCISCO's policies and practices for mental health

23   screening and tracking are inadequate. COUNTY, BERNAL, BASS, THORNBURG,

24   TONGOL, HALLMAN, DOMINICIS, PANGBURN, FRANCISCO, WELLPATH and

25   LEWIS fail to adequately identify, track, and treat the mental health problems of inmates

26   with psychiatric disabilities putting them at a significant risk of serious harm, including

27   death.

28

**COMPLAINT FOR DAMAGES**

62.   Upon information and belief, COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS and WELLPATH do not adequately train custody staff to identify prisoners who are at risk of suicide and respond appropriately to prisoners who are exhibiting suicidal tendencies, putting them at increased risk of harm. This is especially problematic because custody staff, both during the intake process and for the duration of an inmate's time in the Jail, have the primary responsibility for alerting mental health staff when a prisoner is suicidal.

63.   COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, WELLPATH and FRANCISCO routinely fail to identify and track prisoners who are at risk for suicide.

64.   COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, WELLPATH and FRANCISCO routinely house suicidal and seriously mentally ill prisoners in conditions that result in further deterioration of their mental health in violation of standards of minimally adequate mental health care and basic human dignity.

65.   COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, WELLPATH, FRANCISCO and LEWIS exacerbate the psychological trauma prisoners with psychiatric disabilities experience in isolation by failing to provide them with necessary mental health care while they are there. These inmates do not receive sufficient contact with mental health providers (if they receive mental health care at all). And, the harsh conditions of their confinement render less effective the minimal treatment they do receive. As a result, they are put at an increased risk of harm because the conditions in isolation can cause their symptoms, including suicidality, to escalate and force them to stay in isolation even longer.

66.   COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, WELLPATH and FRANCISCO fail to ensure by policy and practice that mental health care staff are consulted prior to placing a prisoner in a safety cell and before a prisoner is released from a safety cell.

COMPLAINT FOR DAMAGES

67.     COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, WELLPATH, FRANCISCO and LEWIS fail to adequately follow up with, monitor, and treat prisoners who have been released from safety cells, including Mr. Regalado who committed suicide while housed in isolation within hours after being released from a safety cell, where he had been placed due to suicidality.

68.     COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, WELLPATH and FRANCISCO have knowledge of the substantial risk of harm caused by inadequate suicide prevention and treatment policies and practices in the Jail, but have failed to take steps to prevent, or even to diminish, the harmful effects of these unlawful policies and practices. COUNTY, BERNAL, BASS, THORNBURG, TONGOL, HALLMAN, DOMINICIS, PANGBURN, WELLPATH and FRANCISCO are thus deliberately indifferent to the risk of harm to prisoners created by their failure to operate a constitutionally adequate suicide prevention and treatment program.

69.     The Jail's low staffing levels further result in mental health care staff being unable to timely respond to prisoners' requests for psychiatric evaluations and treatment, to adequately screen, track, monitor, and provide follow-up care to prisoners who are suffering from serious mental illnesses, and to provide adequate group and individual therapy.

70.     The Jail fails to staff sufficient deputies to enable prisoners to access mental health services and other programs available at the Jails.

**IV.     Defendants' Knowledge of Mr. Regalado's Serious Health Needs**

71.     Mr. Regalado was known to the County of Monterey, by and through its staff and Wellpath staff, as having mental health problems at leasat as early as June 8, 2018.

72.     An inmate intake screening at the Monterey County Jail on December 16, 2019, indicated that Mr. Regalado had a history of mental health disorder and mental health diagnosis with prior suicide attempt and a history of psychiatric hospitalization.

73.     On January 3, 2020, Mr. Regalado was placed on suicide watch at the Monterey County Jail for suicidal ideation/threat. At that time, Mr. Regalado advised that he feared being housed by himself due to his thoughts.

**COMPLAINT FOR DAMAGES**

74.     On January 5, 2020, Mr. Regalado was again placed on watch at the Monterey County Jail due to self-harm resulting in a bloody nose.

75.     On January 11, 2020, Mr. Regalado was again placed on suicide watch at the Monterey County Jail for suicidal ideation/threat.

76.     On February 20, 2020, Mr. Regalado was again placed on suicide watch at the Monterey County Jail for suicidal ideation/threat.

77.     On March 22, 2020, Mr. Regalado was again placed on suicide watch at the Monterey County Jail after reporting he was suicidal and could not remain safe in his cell.

78.     On February 21, 2021, Mr. Regalado was noted to have been in a safety cell for 24 hours and continued to threaten to "jump off the pony wall". That same day, it was noted that he had been left in the booking cell and had gotten up on the wall attempting to dismantle the light fixture and sprinkler head and he had relayed the only place he would feel safe would be a safety cell.

79.     At some point on February 21, 2021, Mr. Regalado was sent for Crisis Evaluation at Natividad Medical Center  (hereinafter "NMH").

80.     On February 24, 2021, Mr. Regalado told Monterey County Jail staff he was suicidal and wrapped a sheet around his neck. It was also noted that he had been placed in a safety cell after attempting to jump off the concrete bed in a suicide watch cell.

81.     On February 28, 2021, Mr. Regalado attempted to hang himself while at NMH mental health crisis unit after being told he was going to be discharged back to Monterey County Jail custody. Monterey County Jail staff were notified of this attempt. After 12 days at NMH for psychiatric admission, Mr. Regalado was discharged back to the care of the Monterey County Jail on March 8, 2021.

82.     On March 9, 2021, Mr. Regalado was noted to have experienced suicidal ideation the prior evening wherein he had tied a sheet with a knot to the light fixture in his cell. It was also noted that deputies removed the sheet.

83.     On March 11, 2021, Mr. Regalado was placed on suicide watch at the Monterey County Jail because he had stated to deputies during a check that he wanted to hurt himself.

**COMPLAINT FOR DAMAGES**

84.     On March 13, 2021, at approximately 1:28 am, Mr. Regalado was sent to NMH for crisis evaluation.

85.     On March 13, 2021, at approximately 4:20 am according to jail records, Mr. Regalado returned from crisis evaluation at NMC to the Jail. NMC recommended that Mr. Regalado be placed on suicide watch. He was placed in a safety cell. At 10:58 am LEWIS discharged him from the safety cell. He was then placed in an isolated cell by himself. The cell contained hanging points.

86.     Defendants failed to recognize the grave danger they were putting Mr. Regalado in by placing him in an isolated cell give his psychiatric history and in light of the fact the cell had hanging points as it was never retrofitted. As such, Defendants were deliberately indifferent to Mr. Regalado.

87.     Upon information and belief in the hours leading up to the suicide, GAVINA, DURRER and LEMON were responsible for safety checks on Mr. Regalado and failed to timely and properly perform the required safety checks. They also failed to recognize the signs and symptoms of suicidal ideation and failed to summon and provide the necessary health care to Mr. Regalado.

88.     On March 13, 2021, at approximately 2:30 pm, Mr. Regalado was found hanging in cell G104 by cloth wrapped around his neck which had been attached to the air flow grate in the cell.

89.     On March 13, 2021, Mr. Regalado was transferred to NMC via ambulance wherein he was ultimately pronounced brain dead and died on March 19, 2021.

**CLAIMS FOR RELIEF**

**First Claim for Relief**

**Deliberate Indifference to Serious Medical and Mental Health Needs in**

**Violation of the Fourteenth Amendment to the Constitution of the United**

**States (Survival Action – 42 U.S.C. § 1983)**

**(Against All Defendants)**

90.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 89 as though fully set forth herein.

91.     COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN have inadequate policies, procedures, and practices for identifying inmates in need of mental health treatment and providing appropriate mental health treatment. COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN failed to appropriately train and supervise staff regarding the provision of treatment to inmates with mental health issues. This is despite multiple suicides in the Jail.

92.     COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS were deliberately indifferent to Mr. Regalado's serious medical needs and ignored multiple signs of suicidal ideation as more fully described above.

93.     COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS were deliberately indifferent to Mr. Regalado's serious medical needs when they failed to perform adequate safety checks, failed to provide adequate mental health care, placed him in a cell with hanging points, missed safety checks, ignored Mr. Regalado's pleas and other signs indicating his need for help, as more fully described above.

94.     COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS have consistently demonstrated deliberate indifference to their constitutional obligation to provide minimally adequate medical and mental health care to inmates in their jails. COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN's failure to correct their policies, procedures and practices, despite longstanding and repeated notice of significant and dangerous deficiencies, evidences deliberate indifference in the provision of medical and mental health treatment.

COMPLAINT FOR DAMAGES

95.    COUNTY    OF    MONTEREY,    BERNAL,    BASS,    THORNBURG,    TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS were on notice that Mr. Regalado was in need of medical and mental health care based on his known history to them and his behavior at the time of his arrest and through his final suicide attempt on March 13, 2021, resulting in his death on March 19, 2021.

96.    COUNTY    OF    MONTEREY,    BERNAL,    BASS,    THORNBURG,    TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS failed to provide necessary medical and mental health evaluation and treatment to Mr. Regalado, as more fully described above, while he was in their custody despite his history of serious mental illness, obvious symptoms of a mental health crisis, and information that he had previously discussed and attempted suicide by hanging at the Monterey County Jail. COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL and MONTEREY OFFICERS failed to alert medical and mental health services of Mr. Regalado's behavior and calls for mental health services. They further failed to remove him from isolation despite his erratic behavior and need for mental health services COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN failed to have adequate policies and procedures in place so that inmates with psychological deficits and suicidal thoughts would not be placed in an isolation cell that could only further deteriorate their condition.

97.    COUNTY    OF    MONTEREY,    BERNAL,    BASS,    THORNBURG,    TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS' acts and/or omissions as alleged herein, including but not limited to their failure to provide or summon appropriate medical or mental health care and to identify suicide risk, along with the acts and/or omissions of COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN in failing to train, supervise and/or promulgate appropriate policies and procedures in order to identify suicide risk and provide treatment, constituted deliberate indifference to Mr. Regalado's serious medical needs, health and safety.

**COMPLAINT FOR DAMAGES**

98.     As a direct and proximate result of Defendants' conduct, Mr. Regalado experienced physical pain, severe emotional distress, and mental anguish as well as loss of his life and other damages alleged herein.

99.     As a result of the injuries to Mr. Regalado, Plaintiff has been injured and is entitled to compensatory damages against Defendants. Plaintiff is entitled to punitive damages against, BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS as the aforementioned acts of BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS were conducted with conscious disregard for the safety of Mr. Regalado and were therefore malicious, wanton, and oppressive. As a result, BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

100.     Plaintiff has sustained a loss of interest on the value of the damages from the date they were incurred to the present and said loss will continue into the future.

**Second Claim for Relief**

**Failure to Protect from Harm in Violation of the Fourteenth Amendment to**

**the Constitution of the United States (Survival Action – 42 U.S.C. § 1983)**

**(Against All Defendants)**

101.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 100 as though fully set forth herein.

102.     Defendants could have taken action to prevent unnecessary harm to Mr. Regalado but refused or failed to do so.

103.     COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN failed to have minimally necessary policies and procedures concerning the adequate identification and housing of Mr. Regalado, whom they knew or should have known to be at risk of self-harm and failed to have minimally necessary policies and

procedures concerning the adequate treatment of Mr. Regalado who they knew or should have known was in need of medical and mental health attention due to risk of self-harm.

104.    COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN failed to implement minimally sufficient policies and procedures to protect inmates from harm. COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN failed to appropriately train and supervise medical and custody staff regarding identification and handling of detainees at risk of harm. With respect to Mr. Regalado, Defendants, upon information and belief, failed to follow even their own suicide prevention procedures to identify, house, and monitor detainees at risk of self-harm. Had the procedures been followed, Defendants would have appreciated the signs of suicidal ideation Mr. Regalado was displaying and would have kept him on suicide watch and not placed him in an isolation cell with hanging points mere hours after a psychiatric crisis wherein he had been transported to the emergency room and advised by discharging medical staff that he needed to remain on suicide watch. Moreover, had COUNTY, BERNAL, BASS, THORNBURG, TONGOL, and MONTEREY OFFICERS followed their policies they would have appreciated the signs of suicidal ideation Mr. Regalado was displaying and would have removed him from the isolation cell, provided or summoned proper medical and mental health care and placed him on suicide watch. Additionally, had WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS followed their policies they would have appreciated the signs of suicidal ideation Mr. Regalado was displaying and would have never taken him off suicide watch and certainly would not have placed him in an isolation cell with hanging points. Moreover, LEWIS and FRANCISCO would have summoned additional further assistance and removed him from the isolation cell when he was showing signs of suicidal ideation. FRANCISCO would have also provided proper medical care so as to ensure Mr. Regalado was receiving the necessary medications and mental health services so as to avoid his death.

105.    Defendants have consistently demonstrated deliberate indifference to their constitutional obligation to provide minimally adequate mental health and medical care to inmates in their jail. Defendants failure to correct their policies, procedures and practices, despite longstanding and

repeated notice of significant and dangerous deficiencies, including multiple attempted and successful suicides, evidences deliberate indifference in the provision of mental health and medical treatment.

106.    Defendants were specifically on notice that Mr. Regalado was in need of mental health attention due to risk of harm based on his known prior mental health history as well as during his most recent incarceration based on his behavior including verbalizing potential self-harm, attempting self harm, requesting not to be placed alone in a cell, requesting mental health services and being advised of his suicidal status when he was discharge from NMC.

107.    Defendants were further on notice as Mr. Regalado was known to them to have a history of psychological ailments, prior suicide attempts, prior suicide watch placements, prior mental health placements, prior crisis intervention and was a known suicide risk.

108.    Defendants failed to provide or summon necessary mental health and medical treatment to Mr. Regalado while he was in their custody and care despite his obvious signs of distress.

109.    Defendants' acts and/or omissions as alleged herein, including but not limited to their failure to take appropriate measures to protect Mr. Regalado from harm including COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN's failure to create minimally necessary policies and procedures ensuring proper housing for inmates in distress, including those that are at risk of harm or suicide, recognizing behavior associated with suicide risk and providing mental health care for inmates, along with the acts and/or omissions of COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN in failing to train, supervise and/or promulgate appropriate policies and procedures in order to protect Mr. Regalado from harm, constituted deliberate indifference to Mr. Regalado's serious medical needs, health, and safety.

110.    As a direct and proximate result of Defendants' conduct, Mr. Regalado experienced physical pain, severe emotional distress, and mental anguish as well as loss of his life and other damages alleged herein.

111.    As a result of the injuries to Mr. Regalado, Plaintiff has been injured and is entitled to compensatory damage, all according to proof at the time of trial.

**COMPLAINT FOR DAMAGES**

112.    The aforementioned acts of BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiff of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future, all according to proof at the time of trial.

113.    Plaintiff has sustained a loss of interest on the value of all damages from the date they were incurred to the present and said loss will continue into the future.

**Third Claim for Relief**

**Deprivation of Substantive Due Process Rights in Violation of First and**

**Fourteenth Amendments to the Constitution of the United States – Loss of**

**Parent/Child Relationship (42 U.S.C. § 1983)**

**(Against All Defendants)**

114.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 113 as though fully set forth herein.

115.    The aforementioned acts and/or omissions of Defendants in being deliberatively indifferent to Mr. Regalado's serious medical needs, health and safety, violating Mr. Regalado's constitutional rights, and Defendants' failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Mr. Regalado deprived Plaintiff of her liberty interest in the parent-child relationship in violation of her substantive due process rights as defined by the First and Fourteenth Amendments to the United States Constitution as both the First and Fourteenth Amendment protect family relationships and unwarranted interference into the relationships of children and their parent.

116.    As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiff suffered injuries and damages as alleged herein including the loss of love, companionship, comfort, care assistance, protection, affection, society, moral support, training, guidance and gifts of Mr. Regalado, as well as the loss of value of Mr. Regalado's financial support. Plaintiff is further entitled to recover prejudgment interest.

**COMPLAINT FOR DAMAGES**

117.    The aforementioned acts and/or omissions of BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH PROVIDERS were willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

118.    Plaintiff has sustained a loss of interest on the value of all damages from the date they were incurred to the present and said loss will continue into the future.

**Fourth Claim for Relief**

**Medical Malpractice (Survival Actions – California State Law)**

**(Against Defendants Wellpath, Francisco, Lewis and Does 1 through 20)**

119.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 118 as though fully set forth herein.

120.    WELLPATH, WELLPATH PROVIDERS and Does 1 through 20, and each of them, failed to comply with professional standards in the treatment of Mr. Regalado's serious mental illness by failing to appropriately assess and evaluate his mental health and suicide risk, failing to take appropriate and timely suicide prevention measures, prematurely removing Mr. Regalado from suicide watch and returning him to an unsafe cell with hanging points, failing to provide appropriate mental health treatment, and failing to prescribe or provide appropriate and necessary psychiatric medications and ensure compliance with those medications, as more fully described above.

121.    WELLPATH, WELLPATH PROVIDERS and Does 1 through 20, and each of them, also failed to appropriately supervise, review, and ensure the competence of medical staff's and custody staff's provision of treatment to Mr. Regalado, and failed to enact appropriate standards and procedures that would have prevented such harm to him.

122.    As a direct and proximate cause of this negligence and failure to meet their professional standards of care, Mr. Regalado suffered pain and suffering prior to and at the time of his death. Plaintiff suffered injuries and damages as alleged herein including the loss of love, companionship, comfort, care assistance, protection, affection, society, moral support, training,

**COMPLAINT FOR DAMAGES**

1    guidance and gifts of Mr. Regalado, as well as the loss of value of Mr. Regalado's financial

2    support.

3    123.    The negligent conduct of WELLPATH PROVIDERS was committed within the course

4    and scope of their employment.

5    124.    As a result of the injuries to Mr. Regalado, Plaintiff has been injured and is entitled to

6    compensatory damages from WELLPATH, WELLPATH PROVIDERS and Does 1 through 20,

7    and each of them, all according to proof at trial.

8    125.    Plaintiff has sustained a loss of interest on the value of all damages from the date they

9    were incurred to the present and said loss will continue into the future.

10

11                              **Fifth Claim for Relief**

12                      **Failure to Furnish / Summon Medical Care**

13        **(Survival Action – California State Law, Cal. Govt. Code §§ 844.6 and 845.6)**

14         **(Against County, Bernal, Bass, Thornburg, Tongol, Gavina, Durrer, Lemon and**

15                                 **Does 1-20 )**

16   126.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 125 as though fully

17   set forth herein.

18   127.    COUNTY, BERNAL, BASS, THORNBURG, TONGOL, GAVINA, DURRER,

19   LEMON and Does 1-20, and each of them, owed Mr. Regalado a duty of care to provide him

20   immediate medical and mental health care.

21   128.    The conduct of COUNTY, BERNAL, BASS, THORNBURG, TONGOL, GAVINA,

22   DURRER, LEMON and Does 1-20, and each of them, alleged herein, including but not limited

23   to the fact that COUNTY, BERNAL, BASS, THORNBURG, TONGOL, GAVINA, DURRER,

24   LEMON and Does 1-20, and each of them, knew or had reason to know that Mr. Regalado was

25   in need of immediate medical and mental health care and that BERNAL, BASS,

26   THORNBURG, TONGOL, GAVINA, DURRER, LEMON and Does 1-20, and each of them,

27   failed to take reasonable action to summon or provide that care, resulting in Mr. Regalado's

28

**COMPLAINT FOR DAMAGES**

death as alleged herein, violated California state law, including Cal. Govt. Code §§ 844.6 and 845.6.

129.    BERNAL, BASS, THORNBURG, TONGOL, GAVINA, DURRER, LEMON and Does 1-20, and each of them, failed to evaluate, diagnose, and treat Mr. Regalado's expressions of suicidal ideation and instead removed him from suicide watch, placed him into an isolation cell with hanging points and ignored his behavior and his pleas for help from mental health providers, which ultimately led to his death by suicide. Moreover, BERNAL, BASS, THORNBURG, TONGOL, GAVINA, DURRER, LEMON and Does 1-20, and each of them, failed to conduct any adequate mental health screenings, timely monitor Mr. Regalado or take any measures to appropriately treat his mental illness and monitor his health as more fully described above.

130.    The alleged conduct of BERNAL, BASS, THORNBURG, TONGOL, GAVINA, DURRER, LEMON and Does 1-20, and each of them, was committed within the course and scope of their employment.

131.    As a direct and proximate result of BERNAL, BASS, THORNBURG, TONGOL, GAVINA, DURRER, LEMON and Does 1-20, and each of them, breach, Mr. Regalado and suffered injuries and damages causing great pain and leading to his death, as alleged herein, and therefore, Plaintiff has suffered damages.

132.    As a result of the injuries to Mr. Regalado, Plaintiff has been injured and is entitled to compensatory damages against Bernal, Bass, Thornburg, Tongol, Gavina, Durrer, Lemon and Does 1-20, and each of them,  all according to proof at trial.

133.    The aforementioned acts of BERNAL, BASS, THORNBURG, TONGOL, GAVINA, DURRER, LEMON and Does 1-20, and each of them, were willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

134.    Plaintiff has sustained a loss of interest on the value of all damages from the date they were incurred to the present and said loss will continue into the future.

**Sixth Claim for Relief**

**Negligent Supervision, Training, Hiring, and Retention**

**COMPLAINT FOR DAMAGES**

**(Survival Action –California State Law Cal., Govt. Code § 815.2)**

**(Against Defendants County, Bernal, Bass, Thornburg, Tongol, Wellpath, Hallman, Dominicis, Pangburn and Does 1 through 20)**

135.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 134 as though fully set forth herein.

136.   COUNTY, BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN, WELLPATH PROVIDERS and Does 1 through 20, and each of them, had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrain from the conduct and/or omissions alleged herein.

137.   COUNTY, BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN, WELLPATH PROVIDERS and Does 1 through 20, and each of them, breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

138.   As a direct and proximate result of COUNTY, BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN, WELLPATH PROVIDERS and Does 1 through 20, and each of them, Mr. Regalado endured pain, suffering, physical injury and emotional distress prior to his death as alleged herein.

139.   As a result of the injuries to Mr. Regalado, Plaintiff has been injured and is entitled to compensatory damages from COUNTY, BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN, WELLPATH PROVIDERS and Does 1 through 20, and each of them, all according to proof at trial.

140.   The aforementioned acts of BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN, WELLPATH PROVIDERS and Does 1 through 20, and each of them, were willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**COMPLAINT FOR DAMAGES**

141.    Plaintiff has sustained a loss of interest on the value of all damages from the date they were incurred to the present and said loss will continue in the future.

**Seventh Claim for Relief**

**Wrongful Death – California Code Civ. Proc. § 377.60**

**(Against All Defendants)**

142.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 141 as though fully set forth herein.

143.    Mr. Regalado's death was a direct and proximate result of the aforementioned wrongful and/or negligent acts and/or omissions of Defendants. Defendants' acts and/or omissions thus were also a direct and proximate cause of Plaintiff' injuries and damages, as alleged herein.

144.    Defendants failed to provide the necessary mental health and medical care to Mr. Regalado despite him being a suicide risk, being advised he should be under suicide watch, exhibiting bizarre behavior and pleas for mental health assistance. Defendants further failed to provide adequate safety checks. Defendants also placed Mr. Regalado in an isolated cell despite his known psychiatric history and pleas not to be isolated. Further, Defendants placed Mr. Regalado in a cell with hanging points and means to commit suicide, despite his mental state.

145.    As a direct and proximate result of Defendants' wrongful and/or negligent acts and/or omissions, Plaintiff incurred expenses for funeral and burial expenses in an amount to be proved.

146.    As a direct and proximate result of Defendants' wrongful and/or negligent acts and/or omissions, Plaintiff suffered the loss of the services, love, companionship, comfort, care, assistance, protection affection, society, moral support, training, guidance, gifts, benefits and financial support. Plaintiff is further entitled to recover prejudgment interest.

147.    Plaintiff is entitled to recover punitive damages against BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN, WELLPATH PROVIDERS and Does 1 through 20, and each of them,  who, with conscious disregard of Mr. Regalado's rights, failed to provide Mr. Regalado with mental health treatment services meeting the professional standard of practice and failed to adhere to the legal mandates of prisoner supervision.

**COMPLAINT FOR DAMAGES**

148.    The aforementioned acts of BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN, WELLPATH PROVIDERS and Does 1 through 20, and each of them, were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiff of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**Eighth Claim for Relief**

**Negligence (Survival Actions – California State Law)**

**(Against All Defendants)**

149.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 148 as though fully set forth herein.

150.    Defendants failed to comply with professional standards in the treatment of Mr. Regalado's serious mental illness by failing to appropriately assess and evaluate his mental health and suicide risk, failed to take appropriate and timely suicide prevention measures, prematurely removed Mr. Regalado from suicide watch and returning him to an unsafe cell with hanging points, failed to provide appropriate mental health treatment and failed to prescribe or provide appropriate and necessary psychiatric medications and ensure compliance with those medications. Defendants failed to recognize Mr. Regalado's signs of distress and requests for help. COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN and Does 1 through 20, and each of them, failed to adopt the minimum policies, procedures, and training necessary to ensure identification or response to an inmate in crisis. Defendants ignored the duties of medical/mental health staff to treat and monitor Mr. Regalado's altered mental status. Defendants failed to complete adequate welfare checks.

151.    COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS, and PANGBURN, and Does 1 through 20, and each of them, also failed to appropriately supervise, review, and ensure the competence of medical/mental health staff's and custody staff's provision of treatment to Mr. Regalado, and failed to enact appropriate standards and procedures that would have prevented such harm to him.

152.    Together, these Defendants acted negligently and improperly, breached their respective duties, and as a direct and proximate result, Mr. Regalado sustained injuries and damages including pain and suffering prior to and at the time of his death.

153.    The negligent conduct of the individual Defendants was committed within the course and scope of their employment.

154.    Mr. Regalado also suffered a wholly preventable death, and Plaintiff incurred funeral and burial expense. Plaintiff has also suffered and will continue to suffer the loss of the services, love, companionship, comfort, care, assistance, protection affection, society, moral support, training, guidance, gifts, benefits and financial support, to the extent recoverable.

155.    The aforementioned acts of BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN, WELLPATH PROVIDERS and Does 1 through 20, and each of them, were therefore malicious, wanton, and oppressive. As a result, the actions of BERNAL, BASS, THORNBURG, TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN, WELLPATH PROVIDERS and Does 1 through 20, and each of them, justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

156.    Plaintiff has sustained a loss of interest on the value of all damages from the date they were incurred to the present and said loss will continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.  For general damages according to proof;

2.  For special damages according to proof;

3.  For compensatory damages according to proof;

4.  For punitive and exemplary damages against each Defendant, where available, according to proof;

5.  For funeral and burial expenses, and incidental according to proof;

6.  For damages for loss of earning capacity and loss of earnings, according to proof;

**COMPLAINT FOR DAMAGES**

7.   For damages for other economic losses, according to proof;

8.   For interest on general and special damages, as permitted by law;

9.   For costs of suit and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and as otherwise authorized by statute or law;

10.  For restitution as the court deems just and proper;

11.  For such other relief as the Court may deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury in this action.

Dated:   March 11, 2022          **ARIAS SANGUINETTI WANG & TORRIJOS LLP**

By:  /s/ Jamie G. Goldstein
ELISE R. SANGUINETTI
JAMIE G. GOLDSTEIN
Attorneys for Plaintiff

**COMPLAINT FOR DAMAGES**