UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANA REGALADO PATINO, individually and as successor in interest of the Estate of Carlos Patino Regalado,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF MONTEREY, et al.,<br><br>Defendants. | Case No. 22-cv-01564-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS FILED BY DEFENDANTS KIP HALLMAN, JORGE DOMINICIS, AND THOMAS PANGBURN, M.D., WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART**<br><br>[Re: ECF 61] |

Before the Court is a motion to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Kip Hallman, Jorge Dominicis, and Thomas Pangburn, M.D. For the reasons stated on the record at the hearing on January 12, 2023 and discussed below, the motion is GRANTED, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART.

**I.   BACKGROUND[1]**

Plaintiff Ana Regalado Patino ("Patino") is the mother of Carlos Patino Regalado ("Regalado"), who died tragically after hanging himself while in custody at the Monterey County Jail ("Jail") in March 2021. *See* First Am. Compl. ("FAC") ¶¶ 1-2, ECF 59. The Jail is operated by Defendant County of Monterey ("County"). *See id.* ¶¶ 14-15. The County contracts with Defendant Wellpath, LLC ("Wellpath"), a private company, to provide medical, mental health, and dental services to inmates at the Jail. *See id.* ¶ 23. Defendant Kip Hallman ("Hallman") is

---

[1] Plaintiff's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

1   Wellpath's President, Defendant Jorge Dominicis ("Dominicis") is Wellpath's Chief Executive
2   Officer, and Defendant Thomas Pangburn, M.C. ("Pangburn") is Wellpath's Chief Clinical
3   Officer. *See id.* ¶¶ 24-26. Although Wellpath is responsible for providing medical and mental
4   health services to inmates, the County retains ultimate authority over the medical care, mental
5   health care, treatment, and safekeeping of Jail inmates. *See id.* ¶ 14.
6        Regalado had a history of mental illness that was known to County staff and Wellpath staff
7   at the Jail. *See* FAC ¶ 71. An inmate intake screening at the Jail on December 16, 2019 noted
8   mental illness and prior suicide attempts. *See id.* ¶ 72. He was placed on suicide watch at the Jail
9   multiple times between January 3, 2020 and March 22, 2020 due to suicidal ideation/threat, and
10  once due to self-harm resulting in a bloody nose. *See id.* ¶¶ 73-77.
11       Regalado exhibited suicidal ideation/threat in February 2021 and March 2021, in the weeks
12  and days prior to his death. On February 21, 2021, he was sent for a crisis evaluation at Natividad
13  Medical Center ("Natividad"). *See* FAC ¶ 79. On February 24, 2021, he told Jail staff that he was
14  suicidal and wrapped a sheet around his neck. *See id.* ¶ 80. On February 28, 2021, he attempted
15  to hang himself while at a Natividad mental health crisis unit. *See id.* ¶ 81. After twelve days at
16  Natividad, Regalado was discharged back to the Jail on March 8, 2021. On March 9, 2021, it was
17  noted that Regalado had experienced suicidal ideation the prior evening and had tied a sheet to a
18  light fixture in his cell, which deputies removed. *See id.* ¶ 82. On March 11, 2021 Regalado was
19  placed on suicide watch at the Jail after saying that he wanted to hurt himself. *See id.* ¶ 83.
20       On March 13, 2021, the day he hanged himself, Regalado was sent to Natividad for a crisis
21  evaluation at 1:28 a.m. *See* FAC ¶ 84. He was returned to the Jail about three hours later, at 4:20
22  a.m. *See id.* ¶ 85. Natividad recommended that Regalado be placed on suicide watch, and he was
23  placed in a safety cell. *See id.* He was discharged from the safety cell at 10:58 a.m. by Jennifer
24  Lewis, a clinical social worker employed by Wellpath. *See id.* ¶¶ 28, 85. Regalado then was
25  placed alone in a cell containing hanging points. *See id.* At approximately 2:30 p.m., Regalado
26  was found in his cell, hanging by cloth that had been attached to the air flow grate and wrapped
27  around his neck. *See id.* ¶ 88. He was transported to Natividad via ambulance. *See id.* ¶ 89. On
28  March 19, 2021, Regalado was pronounced brain dead and died. *See id.*

*(left margin: United States District Court / Northern District of California)*

Patino filed this suit on March 11, 2022, individually and as the successor-in-interest of Regalado's estate. *See* Compl., ECF 1. She filed the operative FAC on August 15, 2022. *See* FAC, ECF 59. She asserts eight claims for relief against the County, County officials and employees, Wellpath, and Wellpath officers and employees. Patino also names Regalado's biological father, Hugo Octavio Esquivel Amesquita ("Esquivel Amesquita") as a nominal defendant because he is a known potential heir to Regalado's estate.

The claims asserted in the FAC are:

(1) Deliberate Indifference to Serious Medical and Mental Health Needs in Violation of the Fourteenth Amendment – Survival Action (42 U.S.C. § 1983) (Against All Defendants);

(2) Failure to Protect from Harm in Violation of the Fourteenth Amendment – Survival Action (42 U.S.C. § 1983) (Against All Defendants);

(3) Deprivation of Substantive Due Process Rights in Violation of First and Fourteenth Amendments – Loss of Parent/Child Relationship (42 U.S.C. § 1983) (Against All Defendants);

(4) Medical Malpractice – Survival Action (California State Law) (Against Defendants Wellpath, Francisco, and Lewis);

(5) Failure to Furnish/Summon Medical Care – Survival Action (California State Law, Cal. Govt. Code §§ 844.6, 845.6) (Against Defendants County, Bernal, Bass, Thornburg, Tongol, Gavina, Durrer, and Lemon);

(6) Negligent Supervision, Training, Hiring and Retention – Survival Action (California State Law, Cal. Govt. Code § 815.2) (Against Defendants County, Bernal, Bass, Thornburg, Tongol, Wellpath, Hallman, Dominicis, and Pangburn);

(7) Wrongful Death (Cal. Civ. Proc. Code § 377.60) (Against All Defendants); and

(8) Negligence – Survival Action (California State Law) (Against All Defendants).

The County and its officials and employees answered the FAC, as did Wellpath and two of its employees. *See* County Defs.' Answer, ECF 62; Wellpath Defs.' Answer, ECF 60. Nominal Defendant Esquivel Amesquita has not appeared. Hallman, Dominicis, and Pangburn filed the current Rule 12(b)(6) motion to dismiss the claims of the FAC asserted against them.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

Defendants Hallman, Dominicis, and Pangburn ("Moving Parties") seek dismissal of all claims asserted against them – Claims 1, 2, 3, 6, 7, and 8 – on four grounds. First, they argue that Claims 1, 2, and 8 must be dismissed because Patino has not complied with California law governing survival actions. Second, Moving Parties argue that Claims 1, 2, and 3, brought under § 1983, do not allege facts linking them to the alleged constitutional violations. Third, they point out that Claim 6 is brought under California Government Code § 815.2, which imposes liability on public entities and not individuals. Fourth, Moving Parties argue that Claims 7 and 8 fail to allege facts showing their direct involvement in the alleged wrongful or negligent conduct.

In opposition, Patino argues that she has complied with California law governing survival actions and that all claims against Moving Parties are adequately pled.

### A. Claims Brought as Regalado's Successor-In-Interest (Claims 1, 2, and 8)

Patino asserts individual claims for injuries she herself suffered as a result of her son's death, and survival claims for injuries her son suffered prior to his death. Moving Parties assert that the latter claims must be dismissed for failure to comply with state law requirements for bringing survival actions. Specifically, Moving Parties seek dismissal of Claims 1-3, brought under § 1983, and Claim 8, a state law claim for negligence.[2]

---

[2] Although Claim 6, a state law claim for negligent supervision and training, also is a survival action asserted against Moving Parties, it is not included in the motion's challenge based on Patino's asserted failure to comply with state law requirements.

4

1  "A claim under 42 U.S.C. § 1983 survives the decedent if the claim accrued before the decedent's death, and if state law authorizes a survival action." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). California law authorizes survival actions as follows: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Civ. Proc. Code § 377.30. Certain requirements must be met to bring a survival action under California law, including the filing of an affidavit or declaration with specific information. *See* Cal. Civ. Proc. Code § 377.32.

Moving Parties contend that Patino has not filed the required affidavit or declaration. Failure to comply with this requirement is a basis for dismissal with leave to amend so that the defect may be cured. *See Kirby v. AT&T Corp.*, No. 3:21-cv-01680-BEN-BGS, 2022 WL 1227993, at *1 (S.D. Cal. Apr. 26, 2022) (dismissing survival action with leave to amend for failure to file affidavit); *Saldivar v. Riverside Police Dep't*, No. CV 20-2081-CAS (PD), 2020 WL 4938356, at *3 (C.D. Cal. May 26, 2020) (dismissing survival action with leave to amend for failure to allege status as successor in interest and failure to file affidavit).

In her opposition, Patino asserts that she filed a Declaration of Successor in Interest on September 12, 2022. The Court cannot locate the declaration on the docket and on that basis will dismiss Claims 1, 2, and 8 with leave to amend. Patino may cure this defect by filing the required declaration or affidavit before she files her amended pleading.

The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 1, 2 and 8.

**B.     Claims Brought Under § 1983 (Claims 1, 2, and 3)**

Moving Parties seek dismissal of Claims 1, 2, and 3, brought under § 1983, for failure to allege facts connecting them to the alleged constitutional violations leading to Regalado's death.

5

### 1. Deliberate Indifference to Medical and Mental Health Needs (Claim 1) and Failure to Protect from Harm (Claim 2)

Moving Parties combine their arguments regarding Claim 1, deliberate indifference to serious medical and mental health needs in violation of the Fourteenth Amendment, and Claim 2, failure to protect from harm in violation of the Fourteenth Amendment. The Court finds that approach to be sensible, as the same legal standards apply to both claims. *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) ("We have long analyzed claims that government officials failed to address pretrial detainees' medical needs using the same standard as cases alleging that officials failed to protect pretrial detainees in some other way.").

Moving Parties argue that Claims 1 and 2 improperly seek to hold them liable under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), which applies only to public entities and not to individuals. Moving Parties also argue that the FAC is devoid of facts showing their personal involvement in the alleged constitutional violations leading to Regalado's death. Finally, Moving Parties contend that the FAC does not allege facts giving rise to supervisory liability. In opposition, Patino argues that she has alleged facts establishing liability against each Moving Party for actions taken in a policymaking or supervisory role.

#### a. *Monell*

Under *Monell* and its progeny, a municipality may be liable under § 1983 when it has a policy that amounts to deliberate indifference to constitutional rights and the policy is the "moving force" behind the alleged constitutional deprivation. *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021). "[A] public entity may be held liable for a longstanding practice or custom . . . when, for instance, the public entity fail[s] to implement procedural safeguards to prevent constitutional violations or, sometimes, when it fails to train its employees adequately." *Id*. (internal quotation marks and citation omitted).

Moving Parties contend that many of the FAC's allegations appear to assert *Monell* liability not only against the County and Wellpath, but also against individual defendants. For example, Claim 1 alleges that "COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN have inadequate policies,

6

1   procedures, and practices for identifying inmates in need of mental health treatment and providing
2   appropriate mental health treatment." FAC ¶ 91. Claim 1 also alleges that "COUNTY OF
3   MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN,
4   DOMINICIS and PANGBURN failed to appropriately train and supervise staff regarding the
5   provision of treatment to inmates with mental health issues." *Id*.

6   The Court agrees with Moving Parties that these allegations appear to be framed in terms
7   of *Monell* liability and that *Monell* claims cannot be asserted against Moving Parties in their
8   individual capacities. Any *Monell* claims against Moving Parties in their official capacities are
9   duplicative of Patino's *Monell* claims against Wellpath. Accordingly, any *Monell* claims asserted
10  against Moving Parties will be dismissed without leave to amend.

### b. Personal Involvement in Decisions re Regalado

12  "Liability under § 1983 must be based on the personal involvement of the defendant."
13  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). "A plaintiff must allege facts, not
14  simply conclusions, that show that an individual was personally involved in the deprivation of his
15  civil rights.' *Id*. Moving Parties argue that the FAC lumps them together with other defendants,
16  so that Moving Parties cannot tell what conduct is attributable to them. Moving Parties contend
17  that the FAC is devoid of factual allegations showing their personal involvement in decisions
18  regarding Regalado's care and confinement.

19  The FAC does lump multiple defendants together in a manner that makes it impossible to
20  tell what each defendant is alleged to have done or not done. For example, Claim 1 alleges that
21  "COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, MONTEREY
22  OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN and WELLPATH
23  PROVIDERS were deliberately indifferent to Mr. Regalado's serious medical needs and ignored
24  multiple signs of suicidal ideation as more fully described above." FAC ¶ 92. However, the FAC
25  contains no facts suggesting that Hallman, Dominicis, or Pangburn – senior executives of
26  Wellpath – had any knowledge of Regalado's existence, let alone his suicidal ideation.

27  Claim 1 also alleges that "COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG,
28  TONGOL, MONTEREY OFFICERS, WELLPATH, HALLMAN, DOMINICIS, PANGBURN

7

1  and WELLPATH PROVIDERS were deliberately indifferent to Mr. Regalado's serious medical
2  needs when they failed to perform adequate safety checks, failed to provide adequate mental
3  health care, placed him in a cell with hanging points, missed safety checks, ignored Mr.
4  Regalado's pleas and other signs indicating his need for help, as more fully described above."
5  FAC ¶ 93.  However, the FAC contains no facts showing that Hallman, Dominicis, or Pangburn
6  were responsible for performing safety checks or for Regalado's housing placement.
7  These and similar group allegations are insufficient to show that Moving Parties were
8  personally involved in the alleged deprivations of Regalado's constitutional rights.

### c. Supervisory Liability

Patino asserts that even if Moving Parties were not directly involved in decisions regarding Regalado's care and confinement, they are subject to supervisory liability for constitutional deprivations flowing from their failure to provide adequate policies, staffing, and training. Moving Parties argue that the FAC does not allege facts giving rise to supervisory liability.

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks and citation omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1208 (internal quotation marks and citation omitted).

The FAC does not allege what action or inaction on the part of each Moving Party caused the alleged deprivations of Regalado's constitutional rights.  For example, Claim 1 alleges that "COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN have inadequate policies, procedures, and practices for identifying inmates in need of mental health treatment and providing appropriate mental health treatment." FAC ¶ 91.  Because the defendants are lumped together, it is unclear which policy each Moving Party implemented and why that policy is deficient.

The Court observes that some of the FAC's group allegations focus on policies that may be outside the scope of Moving Parties' authority. For example, Claim 1 alleges that "COUNTY OF MONTEREY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN failed to have adequate policies and procedures in place so that inmates with psychological deficits and suicidal thoughts would not be placed in an isolation cell that could only further deteriorate their condition." FAC ¶ 96. The FAC does not allege facts establishing that Hallman, Dominicis, or Pangburn have authority to implement policies regarding placement of inmates at the Jail.

The Court finds that the FAC contains "no allegation of a specific policy implemented by the Defendants or a specific event or events instigated by the Defendants that led to" Regalado's death. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012). Patino's reliance on *Martin* is misplaced. *See Martin v. Stainer*, No. CV-16-8581 GW (AS), 2017 WL 2783985 (C.D. Cal. June 27, 2017). In *Martin*, the district court observed that a supervising officer may be liable under § 1983 where the supervising officer has "set in motion a series of acts by others . . . which he knew or reasonably should have known, would cause others to inflict the constitutional injury on the plaintiff." *Id*. at *5 (internal quotation marks and citation omitted). However, the district court found that the plaintiff had *not* made out a claim of deliberate indifference against the warden based on allegations that the warden knew about subordinates' "continued pattern of culpable failure[s]" and failed to make a "reasonable attempt to remedy the problem." *Id*. at 6. Nothing in *Martin* suggests that the allegations made by Patino in the present case are sufficient to show the requisite causal connection between Moving Parties' conduct and Regalado's death.

The motion to dismiss is GRANTED as to Claims 1 and 2, WITH LEAVE TO AMEND as to claims based on Moving Parties' alleged personal involvement and/or supervisory liability and WITHOUT LEAVE TO AMEND as to claims brought under *Monell*.

### 2. Loss of Parent/Child Relationship (Claim 3)

Claim 3, loss of a parent/child relationship in violation of the Fourteenth Amendment, is based on the defendants' asserted deliberate indifference to Regalado's serious medical needs. "Parents and children may assert Fourteenth Amendment substantive due process claims if they

are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "[O]nly official conduct that shocks the conscience is cognizable as a due process violation." *Id.* (internal quotation marks and citation omitted). "A prison official's deliberately indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.* As discussed above, Patino has failed to allege a claim for deliberate indifference against Moving Parties. Consequently, her claim for loss of a parent/child relationship fails as well.

The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 3.

### C. Claim Brought Under California Government Code § 815.2 (Claim 6)

Claim 6 is captioned "Negligent Supervision, Training, Hiring, and Retention (Survival Action – California State Law Cal., Govt. Code § 815.2)." Moving Parties seek dismissal of this claim on the ground that California Government Code § 815.2 imposes liability on public entities and not individuals. In opposition, Patino argues that although Claim 6 is asserted under California Government Code § 815.2 as to the government entity defendants, it is not asserted under that statute as to the individual defendants named in the claim.

Like Patino's other claims discussed above, Claim 6 is pled with group allegations that do not distinguish between the conduct of multiple defendants. Moreover, Claim 6 does appear to be brought under California Government Code § 815.2. Accordingly, the Court will dismiss the claim so that Patino may separate out her allegations regarding the conduct of each defendant, and specify the bases (statutory or otherwise) for the claim.

The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 6.

### D. Claims Grounded in Wrongful or Negligent Conduct (Claims 7 and 8)

Claim 7 is for wrongful death under California Code of Civil Procedure § 377.60. To state a claim under this statute, a plaintiff must allege facts showing that the defendant's wrongful or negligent conduct caused the decedent's death. *See Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006). Claim 8 is for negligence, which requires allegations that the defendant breached a duty of care to the plaintiff and thereby caused an injury. *See Ladd v. Cnty. of San*

10

*Mateo*, 12 Cal. 4th 913, 917 (1996). Moving Parties argue that Patino does not allege facts tying any wrongful or negligent conduct on their part to Regalado's death. The Court agrees. Both claims are based on group allegations against multiple defendants that give no clarity whatsoever as to what Moving Parties did or did not do.

For example, Claim 7 alleges that:

> Defendants failed to provide the necessary mental health and medical care to Mr. Regalado despite him being a suicide risk, being advised he should be under suicide watch, exhibiting bizarre behavior and pleas for mental health assistance. Defendants further failed to provide adequate safety checks. Defendants also placed Mr. Regalado in an isolated cell despite his known psychiatric history and pleas not to be isolated. Further, Defendants placed Mr. Regalado in a cell with hanging points and means to commit suicide, despite his mental state.

FAC ¶ 144. These allegations do not advise Hallman, Dominicis, or Pangburn what wrongful or negligent acts Patino claims each committed, nor do the allegations connect any particular conduct of Hallman, Dominicis, or Pangburn to Regalado's death.

Similarly, Claim 8 alleges that:

> Defendants failed to comply with professional standards in the treatment of Mr. Regalado's serious mental illness by failing to appropriately assess and evaluate his mental health and suicide risk, failed to take appropriate and timely suicide prevention measures, prematurely removed Mr. Regalado from suicide watch and returning him to an unsafe cell with hanging points, failed to provide appropriate mental health treatment and failed to prescribe or provide appropriate and necessary psychiatric medications and ensure compliance with those medications. Defendants failed to recognize Mr. Regalado's signs of distress and requests for help. COUNTY, BERNAL, BASS, THORNBURG, TONGOL, WELLPATH, HALLMAN, DOMINICIS and PANGBURN and Does 1 through 20, and each of them, failed to adopt the minimum policies, procedures, and training necessary to ensure identification or response to an inmate in crisis. Defendants ignored the duties of medical/mental health staff to treat and monitor Mr. Regalado's altered mental status. Defendants failed to complete adequate welfare checks.

FAC ¶ 150. These allegations do not indicate what specific conduct Patino claims gives rise to liability against Hallman, or Dominicis, or Pangburn.

Patino's opposition arguments fail to address this pleading deficiency. For example, she asserts that a wrongful death claim need not be based on a wrongful act such as deliberate indifference, but instead may be based on negligence. While that is a correct statement of the law, the FAC does not allege facts showing wrongful *or* negligent acts on the part of Hallman, Dominicis, or Pangburn. Patino relies on *Frances T.* for the proposition that a corporate officer or

11

director maybe individually liable for his own tortious conduct. *See Frances T. v. Vill. Green Owners Assn.*, 42 Cal. 3d 490, 508 (1986). As *Frances T.* makes clear, however, "a plaintiff must first show that the director specifically authorized, directed or participated in the allegedly tortious conduct; or that although they specifically knew or reasonably should have known that some hazardous condition or activity under their control could injure plaintiff, they negligently failed to take or order appropriate action to avoid the harm." *Id*. As discussed at length above, Patino has not satisfied this pleading standard with respect to any of the Moving Parties because she has not identified what conduct is attributable to each of them.

The motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claims 7 and 8.

## IV. ORDER

(1) The motion to dismiss brought by Defendants Kip Hallman, Jorge Dominicis, and Thomas Pangburn, M.D. is GRANTED, WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART. Leave to amend is granted as to all claims with the exception of any *Monell* claims against these defendants, as to which dismissal is without leave to amend.

(2) Patino shall file any amended pleading by February 23, 2023.

(3) This order terminates ECF 61.

Dated: January 24, 2023

_____
BETH LABSON FREEMAN
United States District Judge